IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02438-EWN-CBS

DANIEL L. ROSALES,
      Plaintiff,
v.

JOE ORTIZ, Director of D.O.C.,
WARDEN LARRY REID, Centennial Correctional Facility (CCF),
CASE MANAGER WATKINS (CCF),
CASE MANAGER LINDSEY (CCF),
ANTHONY DECESARO, DOC Grievance Officer,
SERGENT [sic] MORRIS (CCF),
SERGENT [sic] WARING (CCF),
SERGENT [sic]  WILSON (CCF), and
C/O CHASE (CCF),
C/O PAUL (CCF),
C/O CORDOVA (CCF),
C/O LANGONI (CCF),
C/O KEIL (CCF),
C/O PRICE (CCF),
C/O ARGUELLO (CCF),
      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on: (1) Defendant DeCesaro's Motion to

Dismiss Complaint (filed May 15, 2007) (doc. # 23); and (2) the other Defendants'

("Defendants") "Motion to Dismiss Pursuant to Rule 12(B) [sic]" (filed June 22, 2007)

(doc. # 35).  Pursuant to the Order of Reference dated April 24, 2007 (doc. # 17) and

the memoranda dated May 15, 2007 (doc. # 25) and June 22, 2007 (doc. # 36), these

matters were referred to the Magistrate Judge.  The court has reviewed the Motions,

Mr. Rosales' Responses (filed September 10, 2007) (docs. # 43 and # 44), Defendant

DeCesaro's Reply (filed September 18, 2007) (doc. # 47), Defendants' Reply (filed September 25, 2007) (doc. # 48), the pleadings, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

Plaintiff Daniel L. Rosales is currently incarcerated at the Sterling Correctional Facility of the Colorado Department of Corrections ("CDOC").  Mr. Rosales was previously incarcerated from December 4, 2002 to July 27, 2005 at the Centennial Correctional Facility ("CCF") in Cañon City, Colorado.  (*See* Second Amended Complaint ("SAC") (doc. # 14) at pp. 5-6 of 15).  Mr. Rosales alleges pursuant to 42 U.S.C. § 1983 that Defendants violated his constitutional rights while he was incarcerated at CCF.  (*See* SAC (doc. # 14) at p. 5 of 15).

Mr. Rosales alleges four claims: (1) that he was deprived of "exercise, property and many other privileges that should have been allowed . . ." in violation of his First, Fourth, Eighth, and Fourteenth Amendment rights; (2) that his adult magazines were confiscated without due process and equal protection in violation of his First and Fourteenth Amendment rights; (3) that he was removed from the general population for over fourteen months without due process and equal protection in violation of his Fourteenth Amendment rights; and (4) that he was deprived of exercise on a daily basis in violation of his Eighth Amendment rights.  (*See* SAC (doc. # 14) at pp. 11-13 of 15).  Mr. Rosales also generally complains of certain conditions in the cells at CCF.  (*See* SAC (doc. # 14) at p. 8 of 15).  Mr. Rosales seeks declaratory relief as well as

"nominal, monetary, and punitive damages."  (*See* SAC (doc. # 14) at p. 15 of 15).

Defendants move to dismiss Mr. Rosales' claims on numerous grounds.


II.     Standard of Review

        Defendant DeCesaro moves to dismiss without citation to any specific Federal

Rule of Civil Procedure.  Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b),

without citation to any specific subsection of Rule 12.   DeCesaro and Defendants

essentially argue that Mr. Rosales has failed to state a claim upon which relief can be

granted.

        The court is empowered to dismiss an action "for failure to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The court "must accept all the

well-pleaded allegations of the complaint as true and must construe them in the light

most favorable to the plaintiff."  *Alvarado v. KOB-TV, L.L.C.*, 493 F. 3d 1210, 1215

(10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th

Cir. 1996)).  The court "look[s] to the specific allegations in the complaint to determine

whether they plausibly support a legal claim for relief."  *Alvarado*, 493 F. 3d at 1215 n.

2 (citing *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S. Ct. 1955, 1968-69

(2007) ("the old standard, 'a complaint should not be dismissed for failure to state a

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief' is 'best forgotten as an incomplete,

negative gloss on an accepted pleading standard'")).[1]

Because Mr. Rosales appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

---

[1] The court notes that its Recommendation in this case would be the same regardless of whether it applied "the old 'no set of facts' standard, *see, e.g., David*, 101 F.3d at 1352, or . . . either a plausibility standard or a requirement that the complaint include factual allegations sufficient to 'raise a right to relief above the speculative level.'" *See Alvarado*, 493 F. 3d at 1215 n. 2. (citing *Bell Atlantic Corp.*, 127 S. Ct. at 1965).

III.     Analysis

A.     Liability of Defendants under § 1983

Section 1983 creates a cause of action where a  "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution."  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).


1.     Liability of Defendants in their Official Capacities

Mr. Rosales sues all of the Defendants in their individual and official capacities. (*See* SAC (doc. # 14) at p. 3 of 15).  To the extent that Mr. Rosales is suing Defendants in their official capacities, he is actually attempting to impose liability on Defendants' employer, the CDOC.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state).

The CDOC is considered an agency of the State of Colorado.  *See* Colo. Rev. Stat. § 24-1-128.5.  States and state officials sued in their official capacities are not "persons" within the meaning of § 1983.  *Will v. Michigan Department of State Police*,

491 U.S. 58, 71 (1989).  Absent a waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court.  *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). Such entities cannot be sued for monetary damages arising from alleged conduct which deprives a plaintiff of his or her civil liberties.  The Eleventh Amendment confers total immunity from suit, not merely a defense to liability.  *Ambus*, 995 F.2d at 994 (citation omitted).  To the extent that Mr. Rosales seeks damages, his claims against Defendants in their official capacities are properly dismissed with prejudice.

2.      Liability of Defendants in their Individual Capacities

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities.  *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). To the extent that Mr. Rosales is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law.  *Graham*, 473 U.S. at 165-67.

a.      Failure to State Claim Against Defendants Ortiz and DeCesaro

Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted);  *Mitchell v.*

*Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted);  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").  A defendant may not be held liable merely because of his or her supervisory position.  *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).  There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise.  *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  A plaintiff must both allege in the complaint and prove at trial an affirmative link between the alleged constitutional violation and a defendant's participation.  *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Defendants Ortiz and DeCesaro argue that Mr. Rosales has failed to plead sufficient facts to demonstrate that they had any personal participation in or any supervisory liability for the alleged violations of his constitutional rights. The court agrees.

Mr. Rosales alleges no specific conduct by Defendant Ortiz.  Mr. Rosales' only allegations against Defendant Ortiz are that "Ortiz is responsible for knowing all his Wardens move within their respected facilities [sic]" and that "Ortiz . . . knew these improper proceedings [denial of exercise] were detremental [sic] to the plaintiff's health and well-being."  (SAC (doc. # 14) at p. 2 of 15 ¶ 3, p. 9 of 15 ¶ 65).  Mr. Rosales

argues that by virtue of the "chain of command, . . . the plaintiff put both the Director of (DOC) and the Warden on the complaint." (Mr. Rosales' Response (doc. # 44) at p. 4 of 30). Mr. Rosales argues that "prison officials 'can't just sit on your duff and not do anything.'" (Mr. Rosales' Response (doc. # 44) at p. 5 of 30).

Mr. Rosales' allegations against Defendant Ortiz are vague, conclusory, and unsupported by the law. Mr. Rosales does not identify what specific action Defendant Ortiz took that gave rise to any constitutional violation. Mr. Rosales has not pled that Defendant Ortiz had any direct contact with him or that Defendant Ortiz in any way caused or participated in the alleged constitutional violations. *See McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) (an individual cannot be held liable in a section 1983 action unless he "participated or acquiesced" in an alleged constitutional violation). As Mr. Rosales has failed to allege a basis for holding him individually liable under §1983, Defendant Ortiz is properly dismissed from this civil action.

Defendant DeCesaro was acting as a Step III Grievance Officer at the time Mr. Rosales filed "18 grievances on 12/14/04." (SAC (doc. # 14) at p. 10 of 15 ¶ 76). Defendant DeCesaro denied the grievances on October 6, 2005. (*See* SAC (doc. # 14) at p. 10 of 15 ¶ 76; initial Complaint (doc. # 3) at pp. 20-27 of 28). Mr. Rosales alleges that Defendant DeCesaro "is in violation of due process protected by the 5th Amendment, by not following DOC rules in a proper amount of time" and "for denying the plaintiff's grievences [sic]. . . ." (SAC (doc. # 14) at p. 10 of 15 ¶ 76).[2]

---

[2] To the extent that Mr. Rosales alleges violation of his Fifth Amendment rights, he fails to state a claim. The Due Process Clause of the Fifth Amendment protects against due process violations by the federal government. *See Public Utilities Comm'n v.*

Defendant Decesaro concedes that "[t]he time frame for response was exceeded by Defendant DeCesaro for responding to Plaintiff's grievances." (Defendant DeCesaro's Motion to Dismiss (doc. # 24) at p. 2 of 8). However, the "failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993). *See also Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (claim under section 1983 is available to redress violations of federal statutory and constitutional law). Mr. Rosales' allegation that Defendant DeCesaro violated DOC rules fails to state a claim upon which relief can be granted under § 1983.

Mr. Rosales attempts to hold Defendant DeCesaro liable on the basis that he denied grievances. However, without an allegation of direct responsibility for the alleged violations, Defendant DeCesaro cannot be held liable for an alleged constitutional violation on the basis that he denied a grievance. *See, e.g., Downing v. Clinton*, 2006 WL 3054314, *15 (E. D. Wash. 2006) (in granting motion to dismiss, held that defendant's receipt of grievances did not establish her personal participation in decisions relating to medical care); *Johnson v. G.E.O./Lawton Correctional Facility*, 2005 WL 2739212 (W.D. Okla. 2005) (holding that plaintiff failed to state a claim for relief based upon a defendant's participation in the processing of a grievance; *pro se* plaintiff had not demonstrated the required "affirmative link" between the defendant and the underlying constitutional violation); *Coates v. Sheahan*, 1995 WL 430950, *2 (N.D. Ill. 1995) (holding that grievances submitted to a supervisory official are insufficient to

---

*Pollak*, 343 U.S. 451, 461 (1952) (Fifth Amendment applies to and restricts only the Federal Government and not private persons).

establish that official's personal participation in a constitutional violation).[3]  As Mr.

Rosales has not alleged that Defendant DeCesaro in any way caused or participated in

the alleged constitutional violations, there is no basis for holding him liable under §

1983 and Defendant DeCesaro is properly dismissed from this civil action.

 

     b.     Failure to State Claim for Violation of Fourteenth Amendment

In Claim One, Mr. Rosales alleges that he was denied exercise and other

privileges in violation of his Fourteenth Amendment due process and equal protection

rights.  (SAC (doc. # 14) at p. 11 of 15).  In Claim Two, he alleges that Defendants

confiscated his adult magazines in violation of his Fourteenth Amendment due process

and equal protection rights.  (SAC (doc. # 14) at p. 12 of 15).  In Claim Three, he

alleges that Defendants removed him from the general prison population in violation of

his Fourteenth Amendment due process and equal protection rights.  (SAC (doc. # 14)

at p. 13 of 15; *see also* p. 8 of 15 (alleging he requested lateral transfer to another

facility)).  Mr. Rosales also alleges that he was placed in a diversion program and that

other property was confiscated without due process, including toe nail clippers, bowls,

toothbrushes, dental floss, candy, shampoo, and deodorant.  (SAC (doc. # 14) at pp. 6

of 15 ¶ 43, p. 9 of 15 ¶¶ 67-70; *see also* Mr. Rosales' Response (doc. # 44) at p. 9 of

30).

     "The Fourteenth Amendment provides that no state shall 'deprive any person of

---

[3]    Copies of these unpublished cases are attached to this Recommendation.

life, liberty, or property, without due process of law.' " *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. Amend. XIV). "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted).

While "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement, . . . a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Mr. Rosales has not identified any such laws or regulations. Further, the Supreme Court has instructed that unless conditions of confinement "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," state regulations or policies do not create a liberty interest for prisoners in the conditions of confinement." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). *See also Steffey*, 461 F.3d at 1221 ("the Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' ") (quoting *Sandin*, 515 U.S. at 484). Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

11

i.      Removal from General Prison Population and Associated Restrictions

Prisoners do not have a constitutionally recognized liberty interest in their

security classification or placement.  *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983)

("the transfer of an inmate to less amenable and more restrictive quarters for

nonpunitive reasons is well within the terms of confinement ordinarily contemplated by

a prison sentence.");  *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("Whatever

expectation the prisoner may have in remaining at a particular prison so long as he

behaves himself, it is too ephemeral and insubstantial to trigger procedural due

process protections as long as prison officials have discretion to transfer him for

whatever reason or for no reason at all.");  *Templeman v. Gunter*, 16 F.3d 367, 369

(10th Cir. 1994) (Colorado laws and regulations do not entitle inmates to remain in the

general population absent certain conduct.);  *Frazier v. Dubois*, 922 F.2d 560, 561-62

(10th Cir. 1990) ("a prisoner enjoys no constitutional right to remain in a particular

institution and generally is not entitled to due process protections prior to such a

transfer. . . .").

Nor does Mr. Rosales' allegation of removal from the general prison population

rise to a condition that is sufficiently "atypical" or "significant . . . in relation to the

ordinary incidents of prison life" to implicate a liberty interest.  *See Penrod v. Zavaras*,

94 F.3d 1399, 1406 (10th Cir. 1996) (Tenth Circuit has explicitly held that "the transfer

of an inmate to less amenable and more restrictive quarters for non-punitive reasons is

well within the terms of confinement ordinarily contemplated by a prison sentence.")

(internal quotation marks and citation omitted);  *Talley v. Hesse*, 91 F.3d 1411, 1413

(10th Cir. 1996) ("In *Sandin*, the Court held that the plaintiff's discipline in segregated confinement was not the sort of atypical, significant deprivation that would give rise to a liberty interest entitled to due process protection.") (citation omitted).  The Tenth Circuit has identified relevant factors to consider when determining whether placement in administrative segregation implicates a protected liberty interest: (1) whether "the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) [whether] the conditions of placement are extreme; (3) [whether] the placement increases the duration of confinement . . . ; and (4) [whether] the placement is indeterminate."  *Estate of DiMarco*, 473 F.3d at 1342.  Here, at least three of the relevant factors weigh against an enforceable liberty interest.  Based on Mr. Rosales' allegations, the conditions were not atypical or extreme, his placement did not increase the duration of his confinement, and his removal from the general prison population was temporary.  Likewise, Mr. Rosales' allegations of restricted exercise, canteen, and other privileges fail to rise to a condition that is sufficiently atypical or significant in relation to the ordinary incidents of prison life to implicate a liberty interest.

ii.    Confiscation of "Adult" Magazines and Other Items

The Tenth Circuit Court of Appeals "has ruled that property interest claims by prisoners are also to be reviewed under *Sandin's* atypical-and-significant-deprivation analysis."  *Steffey*, 461 F.3d at 1221 (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir.1999)) (other citations omitted).  "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison

13

conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.' " *Cosco*, 195 F.3d at 1224 (alteration in original, quoting *Sandin*, 515 U.S. at 486).

The confiscation of Mr. Rosales' adult magazines and various other items does not state a valid claim.  "The regulation of type and quantity of individual possession" in prison cells reflects a typical type of restraint imposed on the prison population.  *See Cosco*, 195 F.3d at 1224 (permanent separation of an inmate from his property does not amount to an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life).

Beyond demonstrating a protected interest, Mr. Rosales must also show that he was deprived of that interest without due process.  *See Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998) ("this inquiry examines 'the procedural safeguards built into the statutory or administrative procedure for effecting the deprivation and any remedies for erroneous deprivations . . . .' ").  An unauthorized intentional deprivation of property by a state employee does not "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U .S. 517, 533 (1984).  Mr. Rosales' claim also fails because an adequate post-deprivation remedy was available to him.  Mr. Rosales' asserted property deprivations are properly addressed by following his postdeprivation remedies, including Colo. Rev. Stat. § 24-10-106(1.5)(b). The Supreme Court has indicated that adequate inmate grievance procedures alone

14

may provide a meaningful postdeprivation remedy for purposes of procedural due process.  *See Hudson*, 468 U .S. at 536 n. 15.[4]  As Mr. Rosales has not demonstrated that he was denied an adequate postdeprivation remedy, he has not stated a claim for deprivation of due process.

In sum, Mr. Rosales' claim for violation of his due process rights is properly dismissed for failure to state a claim upon which relief can be granted.[5] [6]

iii.    Failure to State Claim for Violation of Equal Protection

---

[4]    Mr. Rosales alleges that he was prevented from filing grievances from May 2004 to on or about December 6, 2004.  (*See* SAC (doc. # 14) at p. 10 of 15).  Mr. Rosales alleges that his property was seized on November 18, 2003, April 6, 2004, April 10, 2004, December 30, 2004, February 16, 2005, and March 9, 2005.  (*See* SAC (doc. # 14) at p. 7 of 15).  By his own allegations, Mr. Rosales was not prevented from filing grievances regarding any of these seizures of his property.

[5]    To the extent that Mr. Rosales has alleged violation of his Fifth Amendment rights, he fails to state a claim.  The Due Process Clause of the Fifth Amendment protects against due process violations by the federal government.  *See Public Utilities Comm'n v. Pollak*, 343 U.S. at 461 (Fifth Amendment applies to and restricts only the Federal Government and not private persons).  Further, in order to succeed under a Fifth Amendment due process claim, a plaintiff must show a cognizable property or liberty interest.  *Weatherford v. Dole*, 763 F.2d 392, 393 (10th Cir. 1985).  *See also Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 536 (10th Cir. 1995) (due process guarantees of the Fifth and Fourteenth Amendments apply only when a constitutionally protected liberty or property interest is at stake) (citation omitted).

[6]    To the extent that Mr. Rosales argues that Defendants acted negligently (*see* Mr. Rosales' Response (doc. # 43) at p. 7 of 7; Mr. Rosales' Response (doc. # 44) at p. 6 of 30), he has not stated a claim upon which relief can be granted.  Claims of § 1983 liability may not be predicated on negligence.  *Daniels v. Williams*, 474 U.S. 327, 330, 106 S. Ct. 662 (1986).  *See also Medina v. City and County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992) ("negligence and gross negligence do not give rise to section 1983 liability");  *Hudson*, 468 U.S. at 533 (negligent deprivations of property do not violate the Due Process Clause).

Mr. Rosales alleges violation of his equal protection rights.  (*See, e.g.*, SAC (doc. # 14) at pp. 11-13 of 15 ¶¶ 79-81).  Mr. Rosales' allegations do not state a claim for an equal protection violation.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  The challenged disparate treatment must be the result of purposeful discrimination.  *Harris v. McRae*, 448 U.S. 297, 323, 100 S.Ct. 2671 n. 26 (1980).  To properly allege an equal protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).  Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause.

Mr. Rosales has failed to allege that he was treated differently than anyone similarly situated.  Nor has Mr. Rosales alleged that Defendants acted based upon a discriminatory intent or motive.  *See Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 694 (10th Cir. 1996) ("A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent") (citations omitted);  *Villanueva v. Carere*, 85 F.3d, 481, 485 (10th Cir. 1996) (Although "[t]he discriminatory purpose need not be the only purpose, . . . it must be a motivating factor in the decision").  Mr. Rosales' equal

protection allegations are entirely conclusory and fail to state a claim.

      c.     Failure to State Claim for Violation of Eighth Amendment

In Claim One, Mr. Rosales alleges that he was denied exercise and other privileges in violation of his Eighth Amendment rights. (*See* SAC (doc. # 14) at pp. 6-7, 8, 9, 11, 13 of 15). In Claim Four, Mr. Rosales alleges he was deprived of exercise in violation of his Eighth Amendment rights. (*See id.*). Mr. Rosales also alleges various inadequate conditions in the cells at CCF. (*See id.*).

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII. Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As for the objective component, "extreme deprivations" are required to make out a conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Thus, in a conditions-of-confinement case, a "sufficiently serious" deprivation is shown when "a prison official's act or omission . . . result[s] in the denial

of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834

(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  The subjective component

follows from the principle that "'only the unnecessary and wanton infliction of pain

implicates the Eighth Amendment.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S.

at 297).  The "deliberate indifference" subjective standard applies to claims of

inhumane conditions of confinement.  *Wilson*, 501 U.S. at 303-04.  A finding of

deliberate indifference requires a showing that the defendant "knows of and disregards

an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  Under this

standard, "the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the

inference."  *Farmer*, 511 U.S. at 837.

Mr. Rosales alleges that "[f]rom 4/2/04 to 5/6/04, the facility was put on an

emergency 24 hour lockdown for 36 days straight for a stabbing in the PRO-UNIT."

(SAC (doc. # 14) at p. 6 of 15, ¶ 38).  The facility was again "on 24 hr lockdown, from

2/11/05 to 3/15/05 . . . ."  (*Id*.).  "From 5/7/04 to the last day the plaintiff left on 7/27/05,

the facility was and still is on 23 hr lockdown status."  (*Id*.).  Mr. Rosales alleges that

"from 5/04 until the plaintiff left the facility on 7/27/05, inmates were allowed access to

the gym once per week [for] 50 minutes. . . ." and "outdoor exercise for 45 minutes once

every two weeks . . . ."  (SAC (doc. # 14) at p. 7, 9 of 15, ¶¶ 45, 71).

Mr. Rosales alleges that he "was forced to wash with cold water during the 24hr

lockdowns of 4/2/04 to 5/6/04 and 2/11/05 to 3/15/05."  (SAC (doc. # 14) at p. 8 of 15, ¶

59).  Mr. Rosales also alleges that "[f]rom 5/04 until the plaintiff left the facility on

18

7/27/05, he was forced to order canteen from an ad seg canteen list, which was very limited with the max of $35.00 to spend." (SAC (doc. # 14) at p. 6 of 15, ¶ 41). Mr. Rosales further alleges that cell B-3-15 was "poorly vent[i]lated," the window "would not close all the way, and a squirrel crawled into the plaintiff's cell," "never did the staff spray for vermin, bugs or spiders," and "there is no emergency buttons in the cells. (SAC (doc. # 14) at p. 8 of 15, ¶¶ 60-63).

As to the objective component, Mr. Rosales' allegations do not state a claim for deprivation "of the minimal measure of life's necessities," as required to state a claim upon which relief can be granted pursuant to the Eighth Amendment. As the Tenth Circuit Court of Appeals "and other courts have recognized, some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates." *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 810 (10th Cir. 1999) (internal quotation marks and citations omitted). "Although we have never expressly held that prisoners have a constitutional right to exercise, there can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment." *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994) (concluding that an inmate who alleged he had received only thirty minutes of out-of-cell exercise in three months stated an Eighth Amendment claim). Mr. Rosales does not allege a total denial of out-of-cell exercise and has cited no legal authority from the Tenth Circuit that access to the gym once per week for 50 minutes and outdoor exercise for 45 minutes once every two weeks is a violation of the Eighth Amendment.

Nor do Mr. Rosales' additional allegations regarding the limitations on canteen orders and temporary periods of washing with cold water, *inter alia*, state an Eighth Amendment violation.  *See Trujillo v. Williams*, 465 F.3d 1210, 1225 n. 17 (10th Cir. 2006) (allegations of limited access to education, employment, religious programming, housing assignment, recreation time and equipment, the telephone, and the commissary did not state an Eighth Amendment claim) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998));  *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (allegations were not sufficient to show exposure "to a risk that is so grave that it violates contemporary standards of decency"); *Estate of DiMarco*, 473 F.3d at 1337-38 (conditions of confinement in most restrictive housing pod "met the basic necessities of life").  The conditions which Mr. Rosales alleges do not rise to the serious level implicating a violation of his Eighth Amendment rights.

As to the subjective component, Mr. Rosales has not alleged that the responsible prison officials acted with "deliberate indifference."  Mr. Rosales has not alleged that Defendants were personally involved in keeping him in those conditions and did so with deliberate indifference to a risk of harm.  *See Farmer*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Further, many of Mr. Rosales' allegations are too vague and conclusory to state a claim upon which relief can be granted.  As to the ventilation, the squirrel that crawled into his cell, unspecified "spider bites" and "attacks," and the lack of an emergency button, Mr. Rosales has not sufficiently alleged specific dates, circumstances, or

conduct by the named Defendants. In sum, Mr. Rosales' allegations are not adequate to state an Eighth Amendment violation.[7]

        d.      Failure to State Claim for Violation of Fourth Amendment

Mr. Rosales alleges in his first claim that he was denied exercise and other privileges in violation of his Fourth Amendment rights.  Mr. Rosales fails to state a claim under the Fourth Amendment.   The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. Amend. VIII.  In analyzing any Fourth Amendment issue, the threshold question is whether there has been either a "search" or a "seizure."  Mr. Rosales' claim that he was denied exercise and other privileges is not cognizable under the Fourth Amendment.  Further, the Supreme Court has concluded "that prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells . . . ." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).  Mr. Rosales' claim under the Fourth Amendment is properly dismissed with prejudice.

        e.      Mr. Rosales' Claim for Violation of First Amendment

Mr. Rosales alleges that the confiscation of his "adult magazines" on November

---

[7]    In the prison context, the Fourteenth Amendment's due process clause affords no greater protection to a litigant claiming mistreatment than does the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. at 327.  Thus, the court's review of Mr. Rosales' Eighth Amendment claim fully disposes of any Fourteenth Amendment due process claim he has asserted for the same conduct.

18, 2003 and April 6, 2004 "was in violation of the plaintiff's first amendment rights." (SAC (doc. # 14) at p. 7 of 15 ¶48; *see also* ¶ 66).  A prisoner retains all First Amendment rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Nevertheless, merely because prisoners "retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations . . . ." *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979).  Prisoners' First Amendment rights "may be curtailed whenever the institution's officials in the exercise of their informed discretion, reasonably conclude that such [rights] . . . possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132 (1977).  *See also Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989) (relevant inquiry is whether the actions of prison officials were "reasonably related to legitimate penological interests") (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1974)).

Defendants argue that Mr. Rosales' First Amendment claim is barred by the statute of limitations.  Mr. Rosales brings his First Amendment claim pursuant to 42 U.S.C. § 1983.  Federal courts must look to the applicable state statute of limitations to determine the timeliness of a claim under § 1983.  *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993).  Colorado law provides a two-year statute of limitations for actions brought pursuant to § 1983.  *See* Colo. Rev. Stat. § 13-80-102(g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute

22

where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d at 750 (applying § 13-80-102 to § 1983 claim).

The determination of when a § 1983 action accrues is controlled by federal rather than state law. *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (citation omitted). "Section 1983 claims accrue, for the purpose of the statute of limitations, 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.' " *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir.1991) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980) (further quotations omitted)). Mr. Rosales executed the original complaint on August 21, 2006. (*See* doc. # 3 at p. 19 of 28). A prisoner's *pro se* complaint alleging a § 1983 action against state prison officials is treated as filed with the court on the date the prisoner gave it to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 271 (1988).[8] Mr. Rosales' claim arises from conduct that he alleges occurred on November 18, 2003 and April 6, 2004, more than two years before Mr. Rosales executed the initial Complaint and outside the statute of limitations. (*See* SAC doc. # 14) at p. 7 of 15 ¶ 48).

Mr. Rosales argues that the statute of limitations must be tolled because he was prevented from filing any grievance regarding this claim. State law determines the

---

[8]    The court received Mr. Rosales' Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 (doc. # 1) and the initial Complaint (doc. # 3) on November 24, 2006.

applicable statute of limitations and accompanying tolling provisions for § 1983 actions.
*Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). "Once the statute of limitations is
raised as an affirmative defense, the burden shifts to the plaintiff to show that the
statute has been tolled." *Overheiser v. Safeway Stores, Inc.*, 814 P.2d 12, 13 (Colo.
App. 1991). Mr. Rosales argues that Defendant Watkins "failed to distribute
grievances, . . . forc[ing] the plaintiff to file a § 1983 action prematurely . . . ." (SAC
doc. # 14) at p. 10 of 15 ¶ 73). *See, e.g., Baldauf v. Garoutte*, 137 Fed. Appx. 137,141
(10th Cir. (Colo.) June 24, 2005) ("administrative remedies are not 'available' when
prison officials refuse to provide prisoners with grievance forms"), *cert. denied*, 126
S.Ct. 1360 (2006).

Defendants reply that Mr. Rosales' own allegations indicate that he was not
prevented from filing grievances regarding the confiscation of his adult magazines.
The court agrees. Mr. Rosales alleges that he was prevented from filing grievances
from May 2004 to on or about December 6, 2004. (*See* SAC (doc. # 14) at p. 10 of 15).
Mr. Rosales alleges that his magazines were seized on November 18, 2003 and April
6, 2004. (*See* SAC (doc. # 14) at p. 7 of 15). The alleged denial of grievance forms
occurred after Mr. Rosales had the opportunity to file grievances regarding the seizure
of his magazines. (*See* AR 850-04 (doc. # 24-2) at p. 6 of 15 ("A Step I grievance must
be filed no later than 30 calendar days form the date the offender knew, or should have
known, of the facts giving rise to the grievance.")). By his own allegations, Mr. Rosales
was not unable to file grievances regarding the seizure of his magazines. Nor does Mr.
Rosales' argument that he was "forced . . . to file a § 1983 action prematurely" properly

24

address the statute of limitations bar.

"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n. 13 (11th Cir. 2005) (internal quotation marks and citations omitted).  *See also United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (complaint may be dismissed where the "allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations") (citation omitted).  The allegations support dismissal of Mr. Rosales' First Amendment claim as barred by the statute of limitations.

B.     Declaratory Relief

Mr. Rosales' transfer from CCF on July 27, 2005 moots his request for declaratory relief.  *See Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (following release from prison, inmate's claims for declaratory and injunctive relief were moot); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (stating that release to parole from prison generally moots claims for injunctive relief);  *Green v. Branson*, 108 F.3d 1296, 1299-1300 (10th Cir. 1997) (holding that release from prison moots claims for declaratory and injunctive relief); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (inmate's claims for declaratory and injunctive relief regarding prison conditions were moot when he was transferred to another facility and was no longer

subject to those conditions) (citations omitted).  As there is no reasonable expectation

that Mr. Rosales will be subjected to this conduct again, this is not the type of claim to

which an exception to the mootness doctrine applies.  *See Murphy v. Hunt*, 455 U.S.

478, 482 (1982) (recognizing exception to the mootness doctrine where there is a

"reasonable expectation or a demonstrated probability that the same controversy will

recur involving the same complaining party") (internal quotation marks and citation

omitted).

In sum, IT IS RECOMMENDED that:

1.      Defendant DeCesaro's Motion to Dismiss Complaint (filed May 15, 2007)

(doc. # 23) be GRANTED;

2.      Defendants' "Motion to Dismiss Pursuant to Rule 12(B) [sic]" (filed June

22, 2007) (doc. # 35) be GRANTED;

3.      Mr. Rosales' Claims One, Two, Three, and Four and this civil action be

DISMISSED with prejudice for failure to state a claim upon which relief can be granted.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of

Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583

(10th Cir. 1995).  A general objection that does not put the District Court on notice of

the basis for the objection will not preserve the objection for *de novo* review.  "[A]

party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for de novo review by the district court or for

appellate review."  *United States v. One Parcel of Real Property Known As 2121 East*

*30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make

timely objections may bar *de novo* review by the District Judge of the Magistrate

Judge's proposed findings and recommendations and will result in a waiver of the right

to appeal from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80

(10th Cir. 1999) (District Court's decision to review a Magistrate Judge's

recommendation *de novo* despite the lack of an objection does not preclude application

of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's

objections to the Magistrate Judge's report and recommendation must be both timely

and specific to preserve an issue for *de novo* review by the District Court or for

appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining*

*Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions

of the Magistrate Judge's order, cross-claimant had waived its right to appeal those

portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992)

(by their failure to file objections, plaintiffs waived their right to appeal the Magistrate

Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir.

2005) (firm waiver rule does not apply when the interests of justice require review).

        DATED at Denver, Colorado, this 14th day of November, 2007.

BY THE COURT:


      s/Craig B. Shaffer
United States Magistrate Judge